**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JERRY BOTELER,** | ) | |
| **AIS #256161,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CASE NO. 2:14-cv-204-MEF** |
| **OFFICER TOWNSEND,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SPECIAL REPORT**

COMES NOW, the Defendant in the above-styled action, by and through undersigned counsel, and file this Special Report pursuant to the March 24, 2014, Order of this Honorable Court. (Doc. 4). The Defendant states as follows:

**PLAINTIFF'S ALLEGATIONS**

The Plaintiff alleges that Defendant Townsend's actions in "violation of [the] 8th Amendment and deliberate indifference," which, based upon the statement of facts in the Complaint, the Defendant construes as a claim for excessive force and for failure to protect. Should this Court feel that the Defendant has misinterpreted the claims, the Defendant respectfully requests the opportunity to supplement this Special Report. He is seeking monetary damages. It is unclear in what capacity he is suing the Defendant.

**DEFENDANT**

Correctional Officer Townsend is an employee of the Alabama Department of Corrections ("ADOC") at Bullock Correctional Facility ("Bullock"). He may be contacted by and through undersigned.

1

## DEFENDANT'S EXHIBITS

1.      Exhibit A is the Inmate Summary Sheet of Jerry Boetler.

2.      Exhibit B is Affidavit of Marquavis Townsend.

3.      Exhibit C is a Certified Copies of Pertinent Documents.

4.      Exhibit D is Pertinent Medical Records of Jerry Boetler.

## STATEMENT OF FACTS

Plaintiff is an inmate within the ADOC.  He is currently confined at Bullock, and he is currently serving three concurrent three-year sentences for Manufacturing a Controlled Substance, Theft of Property I, and Distribution of a Controlled Substance. (Exhibit A).  The Plaintiff in this matter has a reputation for being a thief, and for stealing items from other inmates and then trading them for drugs. (Exhibit B).

On November 27, 2013, Defendant Townsend was assigned to Cubicle II, which oversees multiple dormitories, including Dormitory J.  He had recently been restricted to the cubicles for an unrelated reason and was not allowed to work in the dormitories on the floor.  At some point that day while the inner crash gates leading to the dorms were open, the Plaintiff had snuck in Dormitory J.  He was not supposed to be in Dormitory J because it is not his assigned dormitory. That afternoon, all dormitories were locked down for a count, which means that the inner crash gates, as well as the outside larger brown door, would have been closed.  As a result, the Plaintiff got locked inside Dormitory J when the count started. (Exhibit B).

Around that same time, at approximately 4:15 pm, Defendant Townsend was relieved from my post by Officer Finis Person, who was Dormitory J's rover, to take a

break to get a drink of water.  As he exited the cubicle to go get some water, he observed the Plaintiff in Dormitory J.  The Plaintiff and some other inmates began exchanging words, and Defendant Townsend heard the Plaintiff getting louder and louder and begin banging on the door.  In response Defendant Townsend entered the vestibule area next to Dormitory J and told the Plaintiff to calm down.  The vestibule area is a lobby or holding area located just outside of the dorm in between the larger brown door and the crash gates.  At no time did Defendant Townsend enter Dormitory J or tell any inmate to harm the Plaintiff in any way.  At no time did Defendant Townsend touch the Plaintiff, hit him with a baton, or push him in any way.  At that point, Defendant Townsend's efforts to calm the situation did not appear to work, and other inmates began fighting with the Plaintiff.  Because Defendant Townsend was restricted to the cubicle and not allowed to enter the dormitory, he could not enter to assist; however, he immediately proceeded to the cubicle to relieve Officer Person, who was allowed to enter the dormitory.  He would have responded to the incident if I had not been restricted to the cubicle.  While he was returning to the cubicle Officer Person was radioing for help, to which he and Officer Noble responded and quelled the disturbance. (Exhibit B & C).

Immediately following the incident the Plaintiff was taken to the Health Care Unit, where he was treated for a couple of small scratches.  The body chart indicated redness to his face, chest, and back, and an open area on the back of his head.  All bleeding was stopped, the wound was cleaned, and he was immediately released back to the ADOC. (Exhibit D at 12).  As is normal protocol, pictures were taken noting the small scratches and redness to the Plaintiff as well as the other participants. (Exhibit C at 6-7).

3

Defendant does acknowledge that the Plaintiff does have back and spine injuries; however, as is very well-documented in the Plaintiff's medical records, any issue relating to his back and spine pre-dated this incident, and was caused by a fall approximately two years prior[1]. (Exhibit D).

## ARGUMENT

### III. PLRA

Pursuant to the PLRA, the Plaintiff cannot recover damages without a physical injury that is more than *de minimis*. <u>See</u> 42 U.S.C.A. § 1997e (e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1312 -13 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's 1313 claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."); <u>Holifield v. Mobile County Sheriff's Dept. of Mobile County, Ala.</u>, 2008 WL 2246961 AT * 3 S.D. Ala. 2008) (same). In the case at bar, the Plaintiff's injuries were minimal. Numerous cases from this circuit have described "injuries" similar to (or even more egregious than) those alleged by the Plaintiff to be *de minimis*. <u>See</u> <u>Sanks v. Williams</u>, 2009 WL 1220621 at * 6, (S.D. Ga., May 4, 2009) (granting summary judgment after noting that "Dr. Fogam . . . observed immediately following the incident as having only 'redness and tenderness to his left

---

1 See for example Exhibit D at pp. 30 (2/3/14 – "Pt. with lower back pain, *He fell 2 yrs ago, 6 mo ago []  pain worsened. . .* the only complaint is back pain. He is always in need of pain meds," emphasis added); 31 (2/25/14 – subject "fell at Kilby 1 yr ago.");34-35, 49-53, 79-84 (complaints of back pain and requests for pain medication prior to 11/27/14).

cheek and mild swelling' and [noting] that Sanks was given 'Motrin, a non-prescription pain reliever, and ice.'"); <u>Johnson</u>, 206 Fed. Appx. 880 at 885 (reasoning that "the minor nature of Johnson's injury suggests that the force applied was de minimis. Although Johnson argues that his injuries were not de minimis because he was treated for more than five months, the fact that Johnson made sick call requests does not mean that his subjective complaints of pain were accurate or that his injury was serious. The medical records bely his claim that his injury was not de minimis because he was given a tetanus shot, and he was subsequently treated with bandages and non-prescription pain relievers. Johnson's finger was not broken or fractured, and there is no evidence that he suffered any permanent injury or debilitating pain.")  The body chart taken immediately following the incident specifically noted "redness" to the face, chest, and back, and a scrape to the back of the Plaintiff's head. (Exhibit D at 12).   The wound was cleaned and he was released back to the ADOC. (Exhibit D at 12).   Further, the pictures taken immediately following the incident showed a couple of minor scrapes to his collar, back of his head, and slight redness to the face and back. (Exhibit C at 6-7).   Thus, the Plaintiff's injuries were not be more than *di minimis* and any claim for monetary damages is barred.

The Plaintiff does allege injuries to his back and spine, and claims that he is now in need of surgery, which the Defendant does not dispute. (Doc. 1 at 3).   However, this allegation can only be intended to mislead the Court, as it cannot be disputed that the Plaintiff's back pain pre-dated the incident (by nearly two years). (See Exhibit D at p. 30 indicating on 2/3/14 that "Pt. with lower back pain, *He fell 2 yrs ago, 6 mo ago [] pain worsened.* . . the only complaint is back pain.   He is always in need of pain meds," emphasis added); at p. 31 indicating on 2/25/14 that subject "fell at Kilby 1 yr ago."; and

5

on pp. 34-35, 49-53, 79-84 documentation of complaints of back pain and requests for pain medication by the Plaintiff prior to the incident on November 27, 2014).  Because this allegation is so wholly unsupported by the record and evidence, this allegation does not create a material dispute such that summary judgment should not be granted. "[C]onclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment." Holifield v. Reno, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997).   This Court can grant summary judgment when the record is so divergent from one party's claims.  See Scott v. Harris,  550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.  This principle has been applied numerous times to medical records that contradict a plaintiff's claims of injury or lack of medical care.  See Roy v. Correctional Medical Services, Inc. 522 Fed. Appx. 597, 600 (11th Cir. 2013) (citing Scott and noting that, "[a]lthough Roy claims that he frequently complained to Holman medical staff regarding his deteriorating condition during this time, the record before us reflects that he only made his first complaint on December 8, thirty-four days after his visit to Dr. Newman" before affirming grant of summary judgment on the claim); Linnell v. Carrabba's Italian Grill, LLC,  833 F.Supp.2d 1235, 1239 (D. Nev. 2011) (citing Scott and noting that "[w]hile Plaintiff testified that he does not have a history of falls, his medical history suggests otherwise."); Puckett v. Huizing,  2010 WL 1032697, 4 (W.D. Mich., 2010) (citing Scott and concluding that, "[i]n this regard, plaintiff's story about his fingers is certainly contradicted by the medical record."); Skylstad v. Reynolds,  248 Fed.

Appx. 808, 811 (9th Cir. 2007) (granting summary judgment after citing Scott and explaining that, "[t]he medical evidence, however, directly contradicts Skylstad's version of events.  Although the dog bite was serious and required medical attention, there is no medical evidence of multiple dog bites, head injury, or cuts on the arms).  As indicated above, only redness and a few minor scrapes were noted immediately following the incident by the medical staff and in the pictures. (Exhibits C at 12 & D at 6-7).  Thus, the Plaintiff cannot show that he suffered more than a *di minimis* injury as a result of this incident, and his claim for monetary damages – the only relief he seeks – should be barred.

## II.      ELEVENTH AMENDMENT IMMUNITY

It is unclear as to what capacity the Plaintiff is suing the Defendant, who is a correctional official.  To the extent that this claim is against him in his official capacity, it is due to be dismissed.  The Supreme Court determined in Will v. Mich. Dept. of State Police, that state officials are not considered persons subject to suit for money damages under § 1983 when sued in their official capacity. 491 U.S. 58, 109 S. Ct. 2304 (1989).  Thus, Plaintiff's claims for damages against the Defendant in his official capacity are barred by Eleventh Amendment immunity and should be dismissed.  See also Alden v. Maine, 527 U.S. 706, 119 S. Ct. 2240 (1999).

## III.     QUALIFIED IMMUNITY

Public officials, in their individual capacities, are afforded the defense of qualified immunity as a protection from money damages claims.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  In

analyzing qualified immunity, the reviewing court must not only focus on the state of the

law but what facts the defendant knew at the time of his challenged conduct.  <u>Anderson v.</u>

<u>Creighton</u>, 483 U.S. 635, 642 (1987) (tasking the reviewing court with determining whether

"a reasonable officer could have believed [his conduct] to be lawful, in light of clearly

established law <i>and the information the [defendant] officers possessed</i>.") (emphasis added).

The shield of qualified immunity is indeed far-reaching:  "As the qualified immunity

defense has evolved, it provides ample protection to all but the plainly incompetent or those

who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  In fact, the

Eleventh Circuit has observed that "[q]ualified immunity thus represents the rule, rather

than the exception." <u>Sanders v. Howze,</u> 177 F.3d 1245, 1249 (11th Cir. 1999).

     The principles described above remain viable even in light of the United States

Supreme Court's holding in <u>Hope v. Pelzer</u>, 122 S. Ct. 2508 (2002).  The Eleventh

Circuit explained that this Circuit had always allowed room for the denial of qualified

immunity in cases where general principles applied with "obvious clarity." <u>Willingham</u>

<u>v. Loughnan</u>, 321 F.3d 1299, 1301 (11th Cir. 2003).  Because that is rarely the case,

however, the court will normally require case law arising out of a factually similar

context before it concludes the public official had sufficient notice or fair warning.  In

other words, "[t]he Supreme Court decision in <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S. Ct.

2508, 153 L. Ed. 2d 666 (2002), did not change the preexisting law of the Eleventh

Circuit much." <u>Willingham</u>, 321 F.3d at 1300.

     While some Plaintiffs may feel that the qualified immunity doctrine gives public

official defendants an unfair advantage, the United States Supreme Court has found sound

policy reasons to endorse qualified immunity: without it public officials not only face the prospect of financial loss through an adverse verdict, the litigation process itself distracts them from their governmental duties, inhibits their discretionary actions – forcing them to "err always on the side of caution,"[2] and it deters able people from public service. Harlow, 457 U.S. at 816.

In order to establish that he was acting within his "discretionary capacity," a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir.1981)). Courts should not be "overly narrow" in interpreting this requirement. Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994). As one district judge from the Middle District of Alabama has observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

Defendant Townsend easily clear the "low hurdle" of demonstrating that any dealings he had with the Plaintiff was within his discretionary authority. Everything alleged in the Complaint describes the Defendant doing what correctional officials do:

---

[2] Such officials as police officers or prison wardens, to say nothing of higher level executives who enjoy only qualified immunity, routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to a plethora of rules, "often so voluminous, ambiguous, and contradictory, and in such flux that officials can only comply with or enforce them selectively." See P. Schuck, Suing Government 66 (1983). *In these circumstances, officials should not err always on the side of caution.* Davis v. Scherer, 468 U.S. 183, 196 (1984) (emphasis added).

supervising and controlling inmates.  Of course the Plaintiff may allege that the Defendant carried these duties out negligently, incompetently, or even unconstitutionally, but they are still duties normally associated with what correctional officials do—that is the standard for the finding of discretionary authority.

Once an official has asserted the defense of qualified immunity and shown that he was acting within his discretionary capacity, the threshold inquiry a court must undertake is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  In other words, do the facts show that Defendant Townsend's conduct violated the Plaintiffs' constitutional rights? The burden is on the Plaintiff to show that the defendant official has violated a clearly established right, and that the law was clearly established.  Travers v. Jones, 323 F.3d 1294, 1295 (11th Cir. 2003) ("Once the defendants established that they were acting within their discretionary authority, a point not in dispute here, the burden shifted to the plaintiff to show that qualified immunity is inappropriate.").

The first aspect of qualified immunity—determining whether the Plaintiff have stated a constitutional claim—while conceptually distinct from consideration of the Plaintiffs' claims on the "merits" is, for all practical purposes, not much different from determining whether the Plaintiff has created a genuine issue of material fact on the merits.  In other words, if the Court determines that the Plaintiff has failed to create a genuine issue of fact as to whether Defendant Townsend's actions constituted excessive force or deliberate indifference, then it necessarily also concludes that the Plaintiff has failed to state a constitutional claim, and Defendant Townsend should be granted

qualified immunity without further inquiry.   "The next, sequential step [once it is determined that the Plaintiff has stated a constitutional claim] is to ask whether the right was clearly established."   Saucier, 533 U.S. at 201.   In this part of the analysis, the reviewing court determines whether the defendant public official had "notice" or "fair warning" that his conduct would violate Plaintiff's constitutional rights.   Willingham, 321 F.3d at 1301.

A.      EXCESSIVE FORCE

The Plaintiff alleges excessive force against Defendant Townsend for allegedly hitting him with a stick in the head and pushing him. (Doc. 1 at p. 3).   However, Defendant Townsend never touched the Plaintiff. (Exhibit B & C).   Specifically, he never hit or pushed the Plaintiff in any way. (Exhibit B).   Thus, no force, much less excessive force, could have been used against the Plaintiff.   Further, given that it is the Plaintiff's burden to provide evidence necessary to overcome qualified immunity, Travers, 323 F.3d at 1295, his bare and conclusory allegation is not sufficient. See Holifield v. Reno, 115 F.3d 1555, 1564 n. 6 (11th Cir.1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir.1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir.1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment....").   Thus, Defendant Townsend is entitled to qualified immunity on this claim.

B.      FAILURE TO PROTECT

The matter of failure to intervene/failure to protect has been discussed in Doe v. Georgia Dept. of Corrections:

11

The Eighth Amendment prohibits cruel and unusual punishment; prison officials violate that amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates. <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1027 (11th Cir.2001). As we have explained, <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1977, 1982-83, 128 L.Ed.2d 811 (1994), sets out objective and subjective elements that must be shown to establish an Eighth Amendment violation. About the objective elements, a prisoner must first show that an objectively substantial risk of serious harm existed; and once it is shown that an official is aware of this objectively substantial risk, the official must respond to this risk in an objectively unreasonable manner. See <u>Marsh</u>, 268 F.3d at 1028-29. About the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 114 S.Ct. at 1979. As <u>*Farmer*</u> explains, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' " <u>Id</u>. Failure to protect from an objectively significant risk that should have been-but was not-perceived, is no infliction of punishment under the Eighth Amendment. <u>Id</u>. So, to show an Eighth Amendment constitutional violation, the summary judgment evidence, viewed in the light most favorable to Plaintiff, must show (i) facts presenting an objectively substantial risk to inmates and awareness of these facts on the part of the officials charged with deliberate indifference; (ii) that the officials drew the subjective inference from known facts that a substantial risk of serious harm existed; and (iii) that the officials responded in an objectively unreasonable manner.

245 Fed. Appx. 899, 902-903 (2007). In addition, "it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1331 (11th Cir. 2008).

In this case, there is no evidence that any specific threat of harm to the Plaintiff was reported to Defendant Townsend by any inmate.  Instead, according to Defendant Townsend's knowledge, the only risk of harm to the Plaintiff was based out of the

Plaintiff's general reputation for being a thief[3] and general arguing that began in the dorm. "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [correctional official's] failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533 at 1537 (11th. Cir. 1990). The Plaintiff's general reputation for being a thief, and his unwillingness to stay in his own dormitory, is insufficient to put Defendant Townsend on notice that a specific, violent incident might erupt. Id. at 1537 (wherein an inmate's report of a "racial problem," without report of a specific threat or fear of imminent violence, was insufficient to show a strong likelihood that inmate would be assaulted). Thus, the totality of the circumstances does not indicate subjective knowledge on behalf of Defendant Townsend.

Nonetheless, Defendant Townsend's actions were reasonable. Upon hearing yelling from the Plaintiff while he was on a break, Defendant Townsend proceeded to the vestibule area just outside of Dormitory J, and tried to calm the Plaintiff, who was being disruptive and banging on the door. (Exhibit B). However, shortly thereafter, a fight erupted inside the dorm on the other side of the gate. (Exhibit B & C). According to the Eleventh Circuit, the opportunity to intervene must be "reasonable" and realistic. Hadley, 526 F.3d at 1331. At that time, Defendant Townsend was restricted to the cubicle, and was not allowed to enter the dormitory. (Exhibit B & C). Instead, he immediately proceeded to the cubicle to relieve Officer Person, who was allowed to enter the dormitory. (Exhibit B). He would have responded to the incident if I had not been restricted to the cubicle. (Exhibit B). Defendant Townsend did not have the opportunity

---

3 Defendant Townsend denies having made any comment to any inmate encouraging violence towards the Plaintiff. (Exhibit B).

to intervene, absent violating direct orders from his superiors.  Thus, he had no realistic opportunity to intervene even after the fight started.  Still, his immediate reaction to relieve an officer that could help was certainly reasonable.  Thus, the Plaintiff cannot show deliberate indifference against Defendant Townsend, and he is entitled to qualified immunity.

## <u>CONCLUSION</u>

His claims for monetary damages – his only relief requested – are barred because he suffered minimal injury as a result of the allegations in this Complaint. <u>See</u> 42 U.S.C.A. § 1997e (e).  For all claims for monetary damages in his official capacity, these Defendant is entitled to Eleventh Amendment immunity. <u>Will</u>, 491 U.S. at 58.  For all claims in Defendant Townsend's individual capacities, he is entitled to qualified immunity because at all times they were acting under state law, and the Plaintiff cannot meet his burden to prove that a constitutional violation existed. <u>Harlow</u>, at 818; <u>Travers</u>, 323 F.3d at 1295.  Specifically, Defendant Townsend never touched the Plaintiff; thus, he could not have used excessive force.  Based upon the totality of the circumstances, the Plaintiff also fails to show subjective knowledge on behalf of Defendant Townsend of more than a possibility of a risk of harm or a reasonable opportunity to intervene; thus, his claim for deliberate indifference must fail. <u>Doe</u>, 245 Fed. Appx. at 902-903; <u>Hadley</u>, 526 F.3d at 1331.  Therefore, this cause is due to be dismissed.

WHEREFORE, above premises considered, Defendant Townsend respectfully request this Honorable Court treat this Special Report as a summary judgment motion, and GRANT said motion.

Respectfully Submitted,

Luther Strange
Attorney General

Anne A. Hill (ADA054)
General Counsel

/s/ Katherine S. Jessip
Katherine S. Jessip (JES006)
Assistant Attorney General

**ADDRESS OF COUNSEL:**
**Alabama Department of Corrections**
**Legal Division**
**301 Ripley Street**
**Post Office Box 301501**
**Montgomery, AL  36130-1501**
**334-353-4849**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day May, 2014, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

Jerry Boteler
AIS #256161
Bullock Correctional Facility
104 Bullock Dr. Hwy 82 E
Union Springs, AL 36089

/s/ Katherine S. Jessip
Katherine S. Jessip (JES006)
Assistant Attorney General

15